[No. 9500–5–I.  Division One.  August 4, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES E. LONG, *Appellant.*

*Royce A. Ferguson, Jr.,* for appellant (appointed counsel for appeal).

*Russ Juckett, Prosecuting Attorney,* and *Russell K. Jones, Deputy,* for respondent.

WILLIAMS, J.—The defendant, Charles E. Long, was charged by information and convicted by a jury of first degree assault. His appeal from the judgment entered on the verdict principally concerns the reliability of a hypnotized witness. We reverse.

The facts are these: On August 5, 1980, in Snohomish County, Long, in the presence of two witnesses, repeatedly stabbed Gregory Freeman with a knife partially severing his jugular vein, collapsing a lung and lacerating his heart. The police arrived shortly thereafter, Freeman was taken to the hospital, Long said that he acted in self–defense and the two witnesses prepared written statements of what happened. One of them, Rena Potter, reported that Free-

man was sitting in a chair, may have had a knife in his hand, and lunged at Long.[1]

Two months later on the eve of the day set for trial, the witness, Potter, at the request of the prosecutor, was hypnotized and questioned by a deputy sheriff who had learned investigative hypnotic technique in a, 3–day course at Edmonds Community College. During the interview, Potter recalled that Freeman did not have a weapon, was sitting in a chair when attacked and rose after being stabbed. This recollection formed the witness' remembrance at the trial held, following a continuance, about 1 month later. Thus, Long's self–defense position was struck a damaging blow, because the other eyewitness was looking elsewhere at the critical time.

Although examined in detail in some other jurisdictions, counsel advises that the question of the hypnotized witness is new in this state. Uniformly, the primary objection to permitting a person whose memory has been enhanced by the hypnotic process to testify is the danger of new material being planted or true memory altered by the hypnotist. Correlative to this is that when called as a witness, the person may not be able to differentiate between a true recollection and a fantasy or suggested detail. *See generally State v. Mack*, 292 N.W.2d 764 (Minn. 1980). Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness,* 68 Cal. L. Rev. 313, 340 (1980). The primary benefit of hypnosis is that the witness' memory of an event may be revivified while in a hypnotic state. The technique is particularly helpful when recall is blocked by a dramatic occurrence or trauma. *United States v. Awkard,* 597 F.2d 667 (9th Cir.), *cert. denied,* 444 U.S. 885 (1979); Spector & Foster, *Admissibility of Hypnotic Statements: Is the Law of Evidence Susceptible?,* 38 Ohio St. L.J. 567 (1977).

█ It is argued that the hypnotic session contaminated

---

[1]The written statement is not in the record. This information is gleaned from the testimony.

Potter's memory to such a degree that she was, in effect, rendered incompetent to testify. Although there appears to be some valid reason for disqualifying every witness hypnotized in connection with the case, Diamond, the general rule of competency in this state is: "Every person is competent to be a witness except as otherwise provided by statute or by court rule." ER 601. CrR 6.12(c)(1) defines incompetent persons as "[t]hose who are of unsound mind, or intoxicated at the time of their production for examination". The evidence at the trial including the testimony of two experts, psychologists, gave no indication that Potter's mind was unsound because of the hypnotism. Nor is there any general understanding that would be the case. Accordingly, Potter must be considered competent.

▮ It is further argued that Potter's testimony, coming from a scientific process not established as reliable, was inadmissible. *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923); *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978). There has been no precise scientific formulation of hypnosis nor is there likely to be for some time to come, if ever. But hypnotic phenomena are commonplace in the legal realm particularly with autosuggestion if not through the influence of another. Fallibility in perception and recall because of psychological factors as well as attitudes, preferences, biases and expectations of a witness are well known to court and counsel. As has been observed:

> Perception and memory are the product of an intricate blend of neurological, psychological, and physiological processes. Both perception and memory are profoundly affected by behavioral and motivational factors that distort the raw data to be perceived and remembered.

(Footnote omitted.) Spector & Foster, at 587. An example is the "logical completion mechanism" by which a person unconsciously fills in the gaps in his recollection of an event that he has partially forgotten or did not totally perceive initially. Selective perception also contributes to the phenomenon whereby two honest citizens swear under oath to diametrical versions of the same occurrence. Though not

"scientific", hypnosis as an aid to memory may under proper circumstances contribute to the truth–seeking task of the court.

It is also argued that the case should be dismissed because the jury could not determine whether Potter's testimony at trial was based upon what she actually saw of the conflict or upon the image developed under hypnosis. The act of the prosecuting attorney in arranging for the hypnotic interview and the amateur psychologist in conducting it extends the question of the reliability of the witness beyond the breaking point. Even in those jurisdictions which have not adopted a per se exclusionary rule extreme caution is required. For example, *see People v. Gonzales,* 108 Mich. App. 145, 310 N.W.2d 306 (1981); *State v. Mack,* 292 N.W.2d 764 (Minn. 1980); *State v. Hurd,* 86 N.J. 525, 432 A.2d 86 (1981); *United States v. Adams,* 581 F.2d 193 (9th Cir.), *cert. denied,* 439 U.S. 1006 (1978).

Judge Eugene A. Wright in *United States v. Adams, supra* at 198–99, said:

> We are concerned . . . that investigatory use of hypnosis on persons who may later be called upon to testify in court carries a dangerous potential for abuse. Great care must be exercised to insure that statements after hypnosis are the product of the subject's own recollections, rather than of recall tainted by suggestions received while under hypnosis.

(Footnote omitted.)

A comprehensive set of standards for the admissibility of hypnotically induced recollection appears in *State v. Hurd, supra* at 533:

> (1) The hypnotic session should be conducted by a licensed psychiatrist or psychologist trained in the use of hypnosis.
>
> (2) The qualified professional conducting the hypnotic session should be independent of and not responsible to the prosecutor, investigator or the defense.
>
> (3) Any information given to the hypnotist by law enforcement personnel prior to the hypnotic session must be in written form so that subsequently the

extent of the information the subject received from the hypnotist may be determined.

(4) Before induction of hypnosis, the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them, carefully avoiding adding any new elements to the witness' description of the events.

(5) All contacts between the hypnotist and the subject should be recorded so that a permanent record is available for comparison and study to establish that the witness has not received information or suggestion which might later be reported as having been first described by the subject during hypnosis. Videotape should be employed if possible, but should not be mandatory.

(6) Only the hypnotist and the subject should be present during any phase of the hypnotic session, including the pre–hypnotic testing and post–hypnotic interview.

Another reasonable requirement is that there be a valid investigatory purpose.

That hypnosis is a valuable and important investigative procedure in police work has been established. Properly handled it can do much good without the harm of contaminating the mind of the person interviewed. But there must be care taken in the employment of the technique and there must be good cause. In this case there was neither.

The session was conducted on the eve of trial long after the investigation had been completed. The purpose could only have been to change the story of the key witness, Potter, from what she had said in a statement written shortly after the event. In addition, the police officer, unqualified in hypnosis, talked to the witness an unknown length of time before the tape recording was commenced, an unacceptable practice.

Part of Potter's testimony was:

Q Are you sure today that Greg had nothing in his hand?
A Yes, I am.
Q Why are you sure?
A I was hypnotized.

And on cross examination:

Q Do you remember whether or not, do you recall what your statement was as far as who lunged at who?

A That I remember when I wrote down, I think Greg lunged at Chuck. That was after I was hypnotized I realized that he did lunge but not at Chuck. When he got stabbed, he jumped out of the chair.

Q Your initial statement an hour after the event was that the victim, Greg, jumped at my client, Chuck Long?

A That's what I thought had happened.

■ At the commencement of the trial, defense counsel moved for dismissal in the furtherance of justice under CrR 8.3(b) which motion was denied. It should have been granted because the improper hypnotic episode arranged by the prosecuting attorney and conducted by a police officer deprived the defendant of a material witness who cannot be rehabilitated. *State v. Dailey,* 93 Wn.2d 454, 610 P.2d 357 (1980). Because of that the case must be dismissed rather than retried.

Reversed and dismissed.

ANDERSEN, C.J., and SWANSON, J., concur.

SWANSON, J. (concurring)—After reviewing the voluminous literature on hypnosis, the recent cases on the admissibility of hypnotically induced recollection, and the record of the instant case, I am persuaded that the hypnosis induced testimony of Rena Potter was inadmissible. I therefore concur in the majority opinion; however, some additional discussion is warranted due to the novelty of the question.

Hypnosis is a state of altered consciousness, resembling deep sleep or a trance, which produces heightened suggestibility in the subject in response to the commands of the hypnotist. The hypnotic state is characterized by the hypersuggestibility and hypercompliance of the subject. Consequently, a hypnotized subject is prone to sheer fantasy, willful lies, or a mixture of fact with gaps filled in by

fantasy. Orne, *The Use and Misuse of Hypnosis in Court,* 27 Int'l J. of Clinical & Experimental Hypnosis 311, 317–18 (1979). While hypnotized, a subject suspends critical judgment and responds to the hypnotist's demands for exact, photographic recall even when the subject's memory is vague or doubtful. Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness,* 68 Cal. L. Rev. 313, 340 (1980). Because the hypnotized subject feels a need to fill gaps of memory, the subject will rarely respond to questions, "I don't know." *State v. Mack,* 292 N.W.2d 764, 768 (Minn. 1980). Thus, the experts agree that hypnosis does not ensure the accuracy of a subject's recall. Diamond, at 335; Orne, at 317–18; Spector & Foster, *Admissibility of Hypnotic Statements: Is the Law of Evidence Susceptible?,* 38 Ohio St. L.J. 567, 584 (1977). In fact, once a subject has been hypnotized, neither the subject nor an expert can separate true memories from fantasy. Diamond, at 348. How then can a jury as trier of fact be expected to determine the credibility of hypnotically induced testimony?

The hypnotically enhanced recall of a witness carries a dangerous potential for abuse. *United States v. Adams,* 581 F.2d 193, 198–99 (9th Cir.), *cert. denied,* 439 U.S. 1006 (1978). To ensure a minimum level of reliability and to provide an adequate record to evaluate the hypnotic procedure employed, the New Jersey Supreme Court recently suggested that the proponent of hypnotically induced testimony must satisfy six requirements which are set forth in the majority opinion. *See State v. Hurd,* 86 N.J. 525, 432 A.2d 86, 96–97 (1981). Other courts follow the standards announced in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), where the results of mechanical or scientific testing are not admissible unless the testing has developed or improved to the extent that experts in the field widely share the opinion that the results are scientifically reliable and accurate. Because the use of hypnosis to aid in accurate memory recall is not generally accepted, these courts reason that the results (hypnotically induced testimony) of this

scientific process (hypnosis) are neither scientifically reliable nor accurate and therefore are inadmissible. *State v. Mena,* 128 Ariz. 244, 624 P.2d 1292 (1980); *People v. Shirley,* 31 Cal. 3d 18, 641 P.2d 775, 181 Cal. Rptr. 243 (1982); *Polk v. State,* 48 Md. App. 382, 427 A.2d 1041 (1981); *People v. Gonzales,* 108 Mich. App. 145, 310 N.W.2d 306 (1981); *People v. Tait,* 99 Mich. App. 19, 297 N.W.2d 853 (1980); *State v. Mack, supra; Commonwealth v. Nazarovitch,* 496 Pa. 97, 436 A.2d 170 (1981); *Chapman v. State,* 638 P.2d 1280 (Wyo. 1982) (Brown, J., dissenting). Either of the above approaches would be preferable to the trial court's decision to let the jury weigh the credibility of hypnotically induced testimony.

Under the requirements of *State v. Hurd, supra,* Rena Potter's testimony would be inadmissible. Potter's hypnotic session was conducted by an amateur hypnotist who was also a deputy sheriff. Although the deputy sheriff recorded the hypnotic session, no one recorded the information about the crime, which he received prior to the hypnosis. In addition, the record contains no description of the incident by the witness prior to her hypnosis. Thus Potter's hypnotically induced recollection is fraught with possible inaccuracies.

Washington has adopted the *Frye* standard for evaluating scientific testing. *State v. Canaday,* 90 Wn.2d 808, 812–13, 585 P.2d 1185 (1978). Potter's testimony would also be inadmissible under this standard.

Moreover, the jury could not fairly evaluate Potter's testimony concerning the crucial issue of self–defense because Potter's recall of the facts was not susceptible to cross examination. Following hypnosis, Potter was subjectively convinced of the veracity of her hypnotically enhanced memory.[2] *See State v. Mack,* 292 N.W.2d at 770. Because

---

[2]On direct examination, the prosecution questioned Rena Potter as follows:

Q  Are you sure today that Greg [the victim] had nothing in his hand?

A  Yes, I am.

Q  Why are you sure?

A  I was hypnotized.

Potter's unshakeable assertion at trial that the victim was unarmed may well have persuaded the jury, the admission of her testimony cannot be considered harmless error.

Further, I cannot find adequate justification for the decision to hypnotize Ms. Potter prior to her interview with defense counsel. It doesn't appear that the defense had an opportunity to interview Ms. Potter without the taint of hypnosis. Through the hypnotic session without safeguards, Ms. Potter's recall became unalterably tainted, thereby rendering her testimony inadmissible. I therefore concur in the majority decision to reverse and dismiss.