[No. 9819-5-I.   Division One.   December 27, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID
MARTIN, *Appellant.*

*Judith Dubester,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca Roe, Deputy,* for respondent.

WILLIAMS, J.—David Martin was charged with the crime of statutory rape in the first degree. Trial to the court sitting without a jury resulted in findings of fact, conclusions of law and a judgment of guilt from which the defendant appeals. We affirm.

The unchallenged findings of fact are:

That on 30 May 1980, the defendant arrived at his home at 8513 S. 114th, Seattle, Washington, about 1 a.m. in an intoxicated state.

Finding of fact 1.

That sometime before 4 a.m., the defendant entered his step–daughter, [the girl's] bedroom, and placed his penis in her mouth.

Finding of fact 2.

That [the girl] was born 28 July 1969 and was then ten years of age on the above date.

Finding of fact 3.

That Shirene Martin came into [the girl's] bedroom at about 4 a.m. and found the defendant in [the girl's] bed with his jeans partly off; that the defendant struck her and threatened her with a gun in response to her accusations that he had molested [the girl].

Finding of fact 4.

That [the girl] was examined at Harborview Medical Center at approximately noon 30 May; that a culture taken at that time by Dr. Carolyn Bach was determined positive for neisseria gonorrhea.

Finding of fact 5.

   That [the girl] received the gonorrhea from sexual contact with the defendant 30 May 1980.

Finding of fact 6.

   That on 26 June 1980, [the girl] underwent hypnosis under the direction of Norah Teeter at Evergreen Hypnosis Center; that this session hypnotically refreshed [the girl's] recollection of the events of 30 May 1980; that this was not a confabulation.

Finding of fact 7.

   ██ The principal issue is whether the trial court properly admitted evidence of the victim's hypnotically refreshed recollection of the episode, Martin arguing that her being hypnotized in connection with the case rendered her incompetent to testify.[1] In *State v. Long,* 32 Wn. App. 732, 649 P.2d 845 (1982), the same question arose for the first time in this state. There we rejected the notion that hypnotically refreshed testimony is per se contaminated and, hence, inadmissible. But there is danger; the opinion states:

> That hypnosis is a valuable and important investigative procedure in police work has been established. Properly handled it can do much good without the harm of contaminating the mind of the person interviewed. But there must be care taken in the employment of the technique and there must be good cause.

*Long,* at 737.

The trial court, recognizing the problems inherent in hypnotically refreshed testimony, observed:

> Because this is a case of first impression in this state, I want to make sure the prosecutor has a background, proper foundation, proper credentials of the hypnotist,

---

[1]Ordinarily, we cannot review alleged error in the admission of evidence upon which unchallenged findings are based. *Simpson v. Hutchings,* 41 Wn.2d 287, 248 P.2d 572 (1952). We do so in this case both because the nature of the challenge is clear, *State v. Williams,* 96 Wn.2d 215, 634 P.2d 868 (1981), and because to do otherwise would work an obvious and manifest injustice upon the appellant, *In re Sego,* 7 Wn. App. 457, 499 P.2d 881 (1972), whose right to an appeal, Const. art. 1, § 22 (amend. 10), should not be foreclosed by the error.

proper recreation of the scene, the tests, the hypnotic trance, before we listen to the little girl.

With the assistance of both counsel, a meticulous examination into all of these conditions followed resulting in a clear showing that there had been no contamination of the memory of the witness either through the influence of third parties or by the actions of the hypnotist.

First, a careful inquiry was conducted concerning the possibility that members of the girl's family might have exerted pressure upon her, thus distorting her memory. The attitudes of Martin's wife (the victim's mother), the girl's grandparents, and her aunt—every person who had been in a position to influence the child—were examined. There was no evidence that anyone had attempted to persuade the girl that Martin had given the disease to her or had committed any wrongful act.

Second, the conduct of the girl from the time of the incident forward was examined. It was established that immediately after the incident she declared that she could not remember what had happened and continued in this posture until the hypnotic session. Although several people asked her about what happened during the night, no one received an answer and no one believed that she was feigning a loss of memory. That the events referred to in finding of fact 2 were deeply traumatic is not questioned.

Third, the hypnotist, Norah Teeter, was shown to be well qualified. The Associate Director of Seattle's Evergreen Hypnosis Center, Teeter was a 1962 graduate of Wellesley College majoring in philosophy and psychology. Prior to trial she had completed over 400 hours of training in hypnosis and had 18 years of experience in the field. Furthermore, she received the girl as a patient for treatment, not as a possible prosecution witness. The mother told Teeter simply that there had been an incident about which the girl had no memory and from which she had contracted gonorrhea. This was the only information Teeter had when the session commenced.

Fourth, the hypnotic session took place in Teeter's office

at the center, most of it was videotaped and only the two principals were present. The girl was placed in a trance and slowly brought to tell of "the incident people have been asking . . . about." During the hypnotic session, which lasted about 45 minutes, Teeter repeatedly urged the girl to explain what had occurred, but at no time did she suggest or in any way indicate a response. It is apparent from a viewing of the videotape that the child was in a deep trance and related the details of her being sodomized with great difficulty and with simple truth. Everything she said fit into the description of the scene supplied by others, including Martin, except for her description of the critical act which only she could have witnessed.

After a review of the record, including the videotape and the testimony of those involved, we are satisfied that the trial court was correct in finding that the hypnotic session properly refreshed the victim's recollection and that there was no confabulation.

Martin argues that "[f]orensic hypnosis experts indicate . . . that once a witness has been hypnotized, meaningful cross-examination of that witness becomes impossible." There is nothing in the record to support this assertion and the theory of it is not established in the cases cited. Martin did have the opportunity to confront the little girl and to cross-examine her. Fallibility in her testimony could have been developed the same as in any case in which the testimony of the witness is influenced by hypnotic phenomena. *See State v. Long, supra.*

Martin next argues that he received ineffective assistance of counsel at trial. The record is quite to the contrary, he being afforded an exceptionally able defense throughout. In addition to the testimony of the girl, and through no fault of defense counsel, Martin was unable to defend against these incontestable facts:

1. He was found on (the girl's) bed at 4 a.m. with his jeans partly down.

2. He had an implausible explanation of how this came to be.

3. (The girl) had an infection of neisseria gonorrhea in her mouth.

4. There was no other hypothesis, reasonable or otherwise, of how she came to have the disease.

After considering the entire record, we are convinced that Martin was ably represented and received a fair and impartial trial. *State v. Gilmore,* 76 Wn.2d 293, 456 P.2d 344 (1969).

Martin also argues that the court abused its discretion in denying several "post–trial motions." The motions, based mostly upon a large amount of literature about forensic hypnosis,[2] were made after the trial judge was elevated to the Supreme Court and were denied by a substitute judge. Although not then available, our decision in *State v. Long, supra,* supports the denial of the motions. There was no error.

The judgment is affirmed.

ANDERSEN, C.J., and CORBETT, J., concur.

Reconsideration denied March 2, 1983.

Review granted by Supreme Court May 24, 1983.

---

[2]See the concurring opinion of Swanson, J., in *State v. Long, supra.*