Joan S. BORAWICK

v.

Morrie SHAY, et al.

No. 5:92CV00033(TFGD).

United States District Court,
D. Connecticut.

Jan. 10, 1994.

Ward J. Mazzucco, Mazzucco & McGonigle, P.C., Danbury, CT, Helen L. McGonigle, Brookfield, CT, for plaintiff.

Charles W. Fleischmann, Margaret M. Wynne, Eugene J. Riccio, Gulash & Fleischmann, Bridgeport, CT, for defendants.

DALY, District Judge.

After careful review of the record, over objection, and in light of Magistrate Judge Margolis' May 26, 1993 filed Supplemental Ruling, the instant Ruling is hereby AFFIRMED, APPROVED and ADOPTED.

SO ORDERED.

### RULING ON DEFENDANT'S MOTION IN LIMINE

MARGOLIS, United States Magistrate Judge.

On January 24, 1992, plaintiff Joan Borawick commenced this diversity action in which she seeks compensatory and punitive damages for defendants' alleged willful, wanton, and malicious sexual assault, sexual molestation, and sexual exploitation of her in 1961 and 1964 when plaintiff was four and seven years old, respectively; defendants Christine

and Morrie Shay are plaintiff's aunt and uncle.[1]

On November 4, 1992 defendants filed the pending motion *in limine* (Dkt. ## 66 & 74), which seeks to exclude from evidence all hypnotically refreshed testimony.[2] On November 24, 1992, plaintiff filed her brief in opposition (Dkt. # 70).[3]

For the reasons stated herein, decision is reserved on defendant's motion *in limine* pending further submissions by both parties.

## I. FACTUAL BACKGROUND

The following information was elicited from defendants' discovery requests to plaintiff and during her deposition, taken July 28–29, 1992. Plaintiff has been under the supervision of a large number of physicians and therapists, commencing in 1980 (Defendants' Exhs. A, B, ¶¶ 2–3, C, ¶¶ 2–3; Plaintiff's Exh. D, ¶¶ 2–3, G). One physician, with whom she consulted from approximately spring 1987 to winter 1988, suggested hypnotherapy to plaintiff, as he indicated that sometimes chronic illness is caused by childhood problems; this physician suggested that plaintiff consult with Val St. Regis of the St. Regis Modality Center (Defendants' Exhs. A & C, D, at 164–65, I, at 164–65; Plaintiff's Exh. B, at 164–65). Plaintiff had approximately twelve to fourteen sessions with St. Regis,

from summer 1987 until winter 1988[4]; she stopped seeing him when St. Regis relocated to Anchorage, Alaska, to establish a drug abuse clinic there (Defendants' Exh. D, at 165, 169–73, I, at 169; Plaintiff's Exh. B, at 165–70, 172). Prior to that time, plaintiff had recollection of child abuse by only one family member other than defendants here (Defendants' Exh. D, at 170; Plaintiff's Exh. B, at 170). During her sessions with St. Regis, she specifically asked him if anything had happened between her and this relative, to which the doctor responded, "No." (Defendants' Exh. F, at 196; Plaintiff's Exh. B, at 196).

On the Wednesday of the second week of February 1989, while driving in her car after a troublesome lunchtime appointment with a holistic doctor, plaintiff had her first memory of sexual abuse by a family member and continued to have additional memories every day or every other day thereafter, "little bits and pieces here, little bits and pieces there, sometimes bigger pieces." (Plaintiff's Exh. B, at 176, 178–79). Two days later, on Friday, during the early evening, plaintiff had a telephone conversation with her sister Kathy, who was living in a halfway house; plaintiff

1. This Court previously held that the applicable statute of limitations for child sexual abuse claims, Conn.Gen.Stat. § 52–577d, could be applied retroactively here and that such retroactive application did not violate defendants' procedural due process rights. *See* Recommended Ruling on Defendants' Motion for Judgment on the Pleadings, filed November 17, 1992 (Dkt. # 69), approved over objection, January 27, 1993. This holding is consistent with the Connecticut Supreme Court's subsequent ruling on this issue, *Roberts v. Caton*, 224 Conn. 483, 619 A.2d 844 (1993).

2. Defendants' brief was filed under seal (*see* Dkt. # 67). The following fourteen exhibits were attached to defendants' brief: copies of plaintiff's various responses to defendants' discovery requests (Exhs. A–C); excerpts from plaintiff's deposition, taken on July 28–29, 1992 (Exhs. D–F, H–I); copy of plaintiff's application for crime victims benefits, dated September 25, 1990 (Exh. G); copy of unmailed letter from plaintiff to defendants, dated March 4, 1989 (Exh. J); copy of *Scientific Study of Status of Refreshing Recollection by the Use of Hypnosis*, 253 J.A.M.A. 1918

(1985) (Exh. K); copy of *People v. Shirley*, 31 Cal.3d 18, 181 Cal.Rptr. 243, 723 P.2d 1354 (1982) (Exh. L); copy of Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness*, 68 CAL.L.REV. 313 (1980) (Exh. M); copy of Cal.Evid.Code § 795 (Exh. N).

3. Seven exhibits were attached to the plaintiff's brief: copy of letter written by Carol A. Waldschmidt, Ph.D., to the California Crime Victims Compensation Program, dated June 1, 1992 (Exh. A); excerpts from plaintiff's deposition (Exhs. B–C); copies of plaintiff's compliance with defendants' discovery request (Exhs. D & G); excerpts from deposition of defendant Morrie Shay, taken on July 31, 1992 (Exh. E); and another copy of plaintiff's unmailed letter to defendants, dated March 4, 1989 (Exh. F).

4. Plaintiff testified that to the best of her recollection, "winter 1988" means early 1988, as St. Regis had relocated to Alaska by the spring of 1988 (Defendants' Exh. D, at 172–73, I, at 173; Plaintiff's Exh. B, at 172–73).

asked Kathy if this relative had also sexually abused her (Defendants' Exh. H, at 220; Plaintiff's Exh. C, at 220–21). During that conversation, Kathy mentioned an incident with defendant Christine Shay, which caused plaintiff to have a "flashback" and feel "like [her] lungs were collapsing" and made her "gasp[ ] for breath...." (Defendants' Exh. H, at 223–24; Plaintiff's Exh. C, at 223–24). Later that night, and at times thereafter until 1990 or early 1991, plaintiff had additional detailed memories of grotesque sexual abuse by her aunt (Defendants' Exh. H, at 223–26, 230–33, 235–36; Plaintiff's Exh. C, at 223–25, 231–36). In 1990, plaintiff had her first memory of sexual abuse by defendant Morris Shay (Defendants' Exh. H, at 236–37; Plaintiff's Exh. C, at 236–37).

## II. DISCUSSION

Defendants allege that because plaintiff's post-hypnotic memories should be excluded because they are not recollections, are not probative, are inherently unreliable, and could only tend to mislead and confuse the jury. Plaintiff argues that although her "memories" chronologically followed her hypnosis, her recollections were not "hypnotically refreshed." Plaintiff further argues that an adverse *in limine* ruling will dispose of all of plaintiff's evidence and prevent the factfinder from reaching the merits of her case.

Prior to the adoption of the Federal Rules of Evidence, courts applied the test developed in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), regarding when novel scientific evidence should be admitted at trial. Under *Frye*, novel scientific evidence is admissible only when it has been "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Id.* at 1014. However, after adoption of the Federal Rules of Evidence, and in particular Rules 702–05 regarding expert testimony,

some jurisdictions have abandoned the *Frye* standard in favor of a more liberal approach. The Second Circuit was among the first courts to do so, in *United States v. Williams*, 583 F.2d 1194 (2d Cir.1978), *cert. denied*, 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979), regarding spectrographic voice analysis. In *Williams*, the Second Circuit instead applied a balancing test, analogous to F.R.Evid. 403, in weighing the evidence's probative value, materiality, and reliability against its tendency to mislead, prejudice, or confuse the jury. 583 F.2d at 1198–1200. Just last year, the Second Circuit applied the *Williams* decision in concluding that DNA profiling evidence was properly admissible. *United States v. Jakobetz*, 955 F.2d 786 (2d Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992).

The Second Circuit has not addressed the admissibility of post-hypnotic testimony under the Federal Rules of Evidence.[5] In *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the U.S. Supreme Court held, in a five-to-four decision, that Arkansas' *per se* rule of excluding a criminal defendant's hypnotically refreshed testimony was unconstitutional under the Fifth, Sixth, and Fourteenth Amendments. *Id.* at 56–62, 107 S.Ct. at 2711–14. The Supreme Court summarized the scientific and legal debate over hypnosis as follows:

> Hypnosis by trained physicians or psychologists has been recognized as a valid therapeutic technique since 1958, although there is no generally accepted theory to explain the phenomenon, or even a consensus on a single definition of hypnosis. The use of hypnosis in criminal investigations, however, is controversial, and the current medical and legal view of its appropriate role is unsettled.
>
> Responses of individuals to hypnosis vary greatly. The popular belief that hyp-

5. *United States v. Miller*, 296 F.Supp. 422, 426–29 (D.Conn.1968), *rev'd*, 411 F.2d 825 (2d Cir. 1969), was decided prior to the adoption of the Federal Rules of Evidence. The district court permitted a government witness to testify after hypnosis regarding a license plate number. The

Second Circuit granted a new trial on the ground that the prosecution had failed to disclose to the defense that the witness had been hypnotized. The Second Circuit thus did not adopt a *per se* rule of admissibility, but rather that the hypnosis could be used to impeach the witness.

nosis guarantees the accuracy of recall is as yet without established foundation and, in fact, hypnosis often has no effect at all on memory. The most common response to hypnosis, however, appears to be an increase in both correct and incorrect recollections. Three general characteristics of hypnosis may lead to the introduction of inaccurate memories: the subject becomes "suggestible" and may try to please the hypnotist with answers the subject thinks will be met with approval; the subject is likely to "confabulate," that is, to fill in details from the imagination in order to make an answer more coherent and complete; and, the subject experiences "memory hardening," which gives him great confidence in both true and false memories, making effective cross-examination more difficult. Despite the unreliability that hypnosis concededly may introduce, however, the procedure has been credited as instrumental in obtaining investigative leads or identifications that were later confirmed by independent evidence.

*Id.* at 58–60, 107 S.Ct. at 2712–13 (multiple citations & footnotes omitted). The Supreme Court added that "a jury can be educated to the risks of hypnosis through expert testimony and cautionary instructions." *Id.* at 61, 107 S.Ct. at 2714. *See also* 27 C. Wright & V. Gold, *Federal Practice & Procedure: Evidence* § 6011, at 113–23 (1990 & 1992 Supp.) ["*Federal Practice* "].

Courts generally have taken three different approaches to this question. First, many state courts have held that a witness who has undergone hypnosis for the purpose of refreshing collection is *per se* incompetent to testify as to any subject discussed while under hypnosis. *See Rock, supra,* 483 U.S. at 57–58 & n. 14, 107 S.Ct. at 2712 & n. 14 (listing multiple cases); *Sprynczynatyk v. General Motors Corp.,* 771 F.2d 1112, 1120 n. 10 (8th Cir.1985) (same), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986); *Federal Practice, supra,* at 128–31 (same). Second, at the opposite end of the spectrum, some federal and state courts have held that the witness is presumed to be *per*

*se* competent because the use of hypnosis to refresh recollection goes to the question of credibility for the trier of fact to resolve. *E.g., Kline v. Ford Motor Co., Inc.,* 523 F.2d 1067, 1069–70 (9th Cir.1975); *Wyller v. Fairchild Hiller Corp.,* 503 F.2d 506, 509–10 (9th Cir.1974). *See also Rock, supra,* 483 U.S. at 58 & n. 16, 107 S.Ct. at 2712–13 & n. 16 (listing multiple cases); *Sprynczynatyk, supra,* 771 F.2d at 1120 n. 9 (same); *Federal Practice, supra,* at 123–28 (same).

And third, a middle ground has been found, with some variations—some federal and state court have held that a witness who has been hypnotized to refresh recollection may be competent to testify if the witness has suffered from a type of memory loss that hypnosis can potentially remedy *and* if safeguards were employed to guard against suggestion and confabulation. *E.g., Sprynczynatyk, supra,* 771 F.2d at 1120 n. 11 (listing multiple cases), 1121–24; *State v. Hurd,* 86 N.J. 525, 534–47, 432 A.2d 86 (1981). *See also Rock, supra,* 483 U.S. at 58–59 n. 16, 107 S.Ct. at 2712–13 n. 16 (listing multiple cases); *Federal Practice, supra,* at 167–75 (same). As the Eighth Circuit held in *Sprynczynatyk, supra,* such a conclusion is consistent with F.R.Evid. 104(a) in that it places "this hypnosis evidentiary problem directly within the control of the district court." 771 F.2d at 1123. The necessary safeguards discussed in *Hurd* were as follows:

First, a psychiatrist or psychologist experienced in the use of hypnosis must conduct the session. This professional should also be able to qualify as an expert in order to aid the court in evaluating the procedures followed. ...

Second, the professional conducting the hypnotic session should be independent of and not regularly employed by the prosecutor, investigator or defense....

Third, any information given to the hypnotist by law enforcement personnel or the defense prior to the hypnotic session must be recorded, either in writing or another suitable form ...

Fourth, before inducing hypnosis the hypnotist should obtain from the subject a

detailed description of the facts as the subject remembers them....

Fifth, all contacts between the hypnotist and the subject must be recorded.... The use of videotape, the only effective record of visual cues, is strongly encouraged but not mandatory.

Sixth, only the hypnotist and the subject should be present during any phase of the hypnotic session, including the pre-hypnotic testing and the post-hypnotic interview.

*Hurd, supra,* 86 N.J. at 545–46, 432 A.2d 86. *See also Rock, supra,* 483 U.S. at 60–61, 107 S.Ct. at 2713–14; *Sprynczynatyk, supra,* 771 F.2d at 1123 n. 14. The Eighth Circuit added two other factors—the appropriateness of using hypnosis for the kind of memory loss involved, and whether there is any evidence to corroborate the hypnotically enhanced testimony. *Sprynczynatyk, supra,* 771 F.2d at 1123.

Plaintiff argues that the *Hurd* safeguards are inapplicable here, where the hypnosis was done for *therapeutic,* not *investigative* purposes. She further emphasizes that psychological injuries caused by childhood sexual abuse are different than for victims of other torts, and that victims of sexual abuse may repress conscious memories of the abuse for years. Thus, the circumstances of this case satisfy the additional element in *Sprynczynatyk, supra,* that hypnosis is appropriate for the kind of memory loss involved.

Plaintiff is correct that merely because a "memory" occurs subsequent to hypnosis does not necessarily mean that the "memory" is the result of such hypnosis. However, given the temporal proximity between plaintiff's hypnotic sessions with St. Regis [6] and the emergence of her "memories," commencing in February 1989, the Court cannot discount away a causal connection between the two.

■ Plaintiff is further correct that in the context of this case, *i.e.,* hypnosis for therapeutic purposes where detailed "memories" of childhood sexual abuse occurred thereafter, strict adherence to the *Hurd* safeguards would be unfair to plaintiffs, if not impossible. However, certain safeguards *are* necessary, not only to bolster a plaintiff's legitimate claims for childhood sexual abuse, but also to protect a defendant against devastating charges. Obviously some safeguards must be met in order to minimize, if not alleviate, the possibility of suggestibility, confabulation, and memory hardening. Such safeguards include, at a minimum, that the hypnotist be appropriately qualified, that he or she avoid adding new elements to the subject's description, and that a permanent record be available to ensure against suggestive procedures. Particularly given the context of the heinous allegations here, the second element added by the Eighth Circuit in *Sprynczynatyk, supra,* is critical, namely other evidence to corroborate the hypnotically enhanced testimony.

■ The record here is devoid of any information regarding St. Regis' qualifications and what safeguards, if any, he took during his hypnosis session with plaintiffs. A party seeking to introduce hypnotically refreshed testimony has the burden of establishing admissibility by clear and convincing evidence. *Hurd, supra,* 86 N.J. at 546–47, 432 A.2d 86. Thus, on or before *April 23, 1993,* plaintiff may submit additional documentation, including the telephonic deposition of St. Regis,[7] and any corroborative evidence from a source other than plaintiff herself[8]; on or before *May 7, 1993,* defendants may file supplemental documentation or briefs.

---

6. *See* note 4 *supra.*

7. According to plaintiff, St. Regis is seventy-two years old, resides in Anchorage, Alaska, and is in poor health, having been hospitalized at least twice in 1993 for pneumonia (*see* Dkt. # 78, at 4).

8. For example, many of the doctors and therapists with whom plaintiff has consulted were retained by her *after* her hypnosis (*see, e.g.,* Defendants' Exh. F, at 213; Plaintiff's Exh. A). Their testimony and records would not be independently corroborative, to the extent that they rely upon information provided to them by virtue of plaintiff's hypnotically refreshed recollection.

*See* 28 U.S.C. § 636(b) (**written objections to ruling must be filed within ten days after service of same**); F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS*, 892 F.2d 15, 16 (2d Cir.1989) (**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit**).

Dated at Bridgeport, Connecticut, this 24th day of March, 1993.

### SUPPLEMENTAL RULING ON DEFENDANTS' MOTION IN LIMINE

Familiarity is presumed with this Magistrate Judge's Ruling on Defendants' Motion in Limine, filed March 24, 1993 (Dkt. # 95) ["Prior Ruling"], which reserved decision on defendants' motion, pending additional documentation, including the telephonic deposition of plaintiff's hypnotherapist, Valerian St. Regis (at 10–11).

On April 7, 1993, plaintiff filed both a motion for reconsideration (Dkt. ## 100–01) and an objection (Dkt. # 102) to the Prior Ruling. Defendants filed an objection to plaintiff's motion on April 15, 1993 (Dkt. # 105). In accordance with deadlines estab-

lished in the Prior Ruling (at 10–11), on April 23, 1993, plaintiff filed her additional submissions (Dkt. ## 107–08), with nine exhibits,[1] and on May 7, 1993, defendants filed their supplemental submissions (Dkt. ## 109–10), with ten exhibits.[2]

For the reasons stated below, defendants' motion *in limine* is *granted.*

### I. DISCUSSION

The Prior Ruling set forth at least some requisites which must be met before plaintiff's hypnotically refreshed recollections can be introduced at trial:

> Plaintiff is … correct that in the context of this case, *i.e.,* hypnosis for therapeutic purposes where detailed "memories" of childhood sexual abuse occurred thereafter, strict adherence to the *Hurd* [*State v. Hurd,* 86 N.J. 525, 545–46, 432 A.2d 86 (1981) ] safeguards would be unfair to plaintiffs, if not impossible. However, certain safeguards *are* necessary, not only to bolster a plaintiff's legitimate claims for childhood sexual abuse, but also to protect a defendant against devastating charges. Obviously some safeguards must be met in order to minimize; if not alleviate, the possibility of suggestibility, confabulation, and memory hardening. Such safeguards include, at a minimum, that the hypnotist be

---

1. These exhibits were as follows: the complete transcript of St. Regis' deposition, taken on April 8, 1993, with subexhibits 1–10 ["St. Regis Dep. Tr."] (Exh. A); two videotapes of the St. Regis deposition (Exh. B); membership information regarding the American Society of Clinical Hypnosis (Exh. C); excerpts from the transcript of plaintiff's deposition, taken on July 29, 1992 (Exh. D); a copy of the affidavit of Dr. Carol Waldschmidt, dated February 16, 1993 (Exh. E); an affidavit by Dr. Anthony E. Reading, dated April 20, 1993 (Exh. F); copy of an affidavit from Dr. Irwin Ruben, dated June 15, 1992 (Exh. G); copy of an affidavit by plaintiff, dated December 13, 1992 (Exh. H); and copy of excerpts from *Diagnostic & Statistical Manual of Mental Disorders* (Third ed. rev. 1987) (Exh. I).

2. These exhibits were as follows: another copy of the St. Regis deposition transcript, with ten subexhibits (Exh. A); excerpts from the March/April 1993 issue of *Body Mind Spirit* magazine

(Exh. B); copy of CAL.BUS. & PROF.CODE §§ 2902–08, 2912–13, 2970 (Exh. C); copy of CAL.BUS & PROF.CODE §§ 4980, 4980.02, 4980.40–.42 (Exh. D); copies of correspondence between counsel, with copies of the medical records of Dr. David Allen and the Pacific Medical Center attached (Exh. E); copy of Orne & Hammer, "Hypnosis," *Encyclopedia Britannica* 133–40 (15th Ed.1974) (Exh. F); copy of Orne, "The Use and Misuse of Hypnosis in Court," *Critical Issues in American Psychiatry and the Law* 211–45 (1985) (Exh. G); copy of Orne, Dinges & Orne, "The Forensic Use of Hypnosis," *National Institute of Justice/Research in Brief* (Dec. 1984) (Exh. H); copy of Orne, Soskis, Dinges, Orne & Tonry, "Hypnotically Refreshed Testimony: Enhanced Memory or Tampering with Evidence?," *National Institute of Justice/Issues & Practices* (Jan.1985) (Exh. I); and copy of plaintiff's Fourth Supplementary Compliance to Defendants' Interrogatories, dated August 26, 1992 (Exh. J).

appropriately qualified, that he or she avoid adding new elements to the subject's description, and that a permanent record be available to ensure against suggestive procedures. Particularly given the context of the heinous allegations here, the second element added by the Eighth Circuit in *Sprynczynatyk [v. General Motors Corp.,* 771 F.2d 1112, 1123 (8th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986) ] is critical, namely other evidence to corroborate the hypnotically enhanced testimony.

(at 10) (emphasis in original).

To that end, St. Regis was deposed, at great length, on April 8, 1993 (*see also* Dkt. ## 97–98). St. Regis is seventy-one years old (St. Regis Dep. Tr. at 8). He has had no formal education beyond high school (*id.* at 24, 92–93, 95, 96). For five years, commencing when he was fifteen years old, St. Regis apprenticed with a retired Swiss psychiatrist, travelling with him throughout Europe, India, and South America in search of "faith healers" (*id.* at 24–26, 92–94). After leaving the Army, he worked in Europe and South America as a "stage hypnotist," on tour boats, nightclubs and resorts (*id.* at 22, 95–96). St. Regis testified that he has been a hypnotherapist "off and on [for] 50 years" (*id.* at 9). There was no testimony regarding his employment until 1987, when St. Regis was hired by Dr. Ronald Peters and Dr. David Kearney, a certified acupuncturist, at the Pacific Medical Center ["PMC"], described by St. Regis as a "rather eclectic clinic," with "a rather large clientele, ... [most of whom were] people involved in [the] entertainment industry" (*id.* at 10, 44–47, 83–84, 100, 106–07, 108, & subexhs. 2–3). Dr. Peters was an owner of PMC and its medical director, and was one of two medical doctors on staff there (*id.* at 10, 47–48, 100, 106–07). St. Regis estimated that he saw over one hundred clients there, charging $85 per session (*id.* at 49, 115–16). In December 1988, he relocated to Anchorage, Alaska, where he maintains a small clinic, St. Regis Modality, using hypnosis to help with problems such as obesity, tobacco addiction, stress, and pain (*id.* at 21–24, 38–39, 90–91, 108–09).

St. Regis has attended, and given, numerous lectures on the topic (*id.* at 26–27, 85–88, 101, & subexhs. 5 & 7). He is a member of professional associations, including the American Association of Professional Hypnotherapists and the American Hypnotherapy Association (*id.* at 29–32, 84–85, 88–89, 100 & subexhs. 4, 6 & 8). He is not licensed anywhere as a clinical psychologist and is not a member of the American Society of Clinical Hypnosis (*id.* at 96–97, 100–01). The only "professional" publication to which he subscribes is *Mind and Body* (*id.* at 99–100).[3] Other the past fifteen years, he developed a unit for cranial electronic stimulation ["CES"], which he testified was approved last year by the FDA (*id.* at 35–36, 79–80, 110–11). He has never testified in court as an expert in hypnotherapy, nor has he been retained by any law enforcement agency, except for one agency dealing with misdemeanors (*id.* at 36–38).

St. Regis testified that he has a standard procedure he uses to hypnotize a subject, in which he utilizes his CES equipment; he never tapes or videotapes his initial interview with patients (*id.* at 40–44, 49–50, 58). He prepared notes, however, "pertinent" for his next session with a patient (*id.* at 50).

In 1987, plaintiff was referred to St. Regis by Dr. Peters, seeing her approximately ten to twelve times during the course of a year (*id.* at 10, 51–52, 54–55, 97–98). St. Regis testified that he "absolutely [did] not" make any suggestions to plaintiff (*id.* at 68, 75–76). Although St. Regis did prepare contemporaneous medical reports, none of them were available to him, as such records were retained at PMC, which closed in 1988 for financial reasons (*id.* at 11–12, 13–14, 17, 58, 104–05, 107–08, 110, & subexh. 10). Using the "regression" approach, taking her back

---

**3.** Defendants were unable to locate a publication with this title. They did find, however, a periodical entitled *Body Mind Spirit,* which contained an advertisement for the American Institute of Hypnotherapy (*see* Defendants' Exh. B).

to three to five-years-old, plaintiff recounted numerous incidents of sexual abuse, specifically identifying her aunt and uncle, and another relative (*id.* at 60–63, 65–66, 70). St. Regis testified as to exacting details of plaintiff's "rather horrific experiences" at her relatives' home (*id.* at 63–65). Upon awakening, plaintiff had no memory of what had transpired (*id.* at 74–75). Dr. Peters and St. Regis concurred in not revealing this information to plaintiff, as it "would be absolutely devastating to her at the time" (*id.* at 67–68). He agreed that her subsequent memories of sexual abuse were hypnotically refreshed (*id.* at 78–79). St. Regis further testified that prior to his own deposition, he read excerpts from plaintiff's deposition transcript, provided to him by plaintiff's counsel (*id.* at 113–14, 116–17).

By St. Regis' own deposition testimony, plaintiff's recollections of alleged sexual abuse by defendants was "hypnotically refreshed." Based upon St. Regis' deposition testimony, there is no indication that St. Regis added new elements to plaintiff's descriptions while under hypnosis. Although a permanent record was kept by St. Regis, such records are no longer available to him, PMC having closed its doors.

■ However, even giving plaintiff (and St. Regis) every benefit of the doubt with respect to the elements which must be satisfy in order to introduce hypnotically refreshed testimony, despite his experience "off and on [for] 50 years," he simply is not appropriately qualified. His educational background does not go beyond high school, which education was bifurcated by his apprenticeship abroad with a retired Swiss psychiatrist, researching "faith healers." He spent time in Europe and South America as a "stage hypnotist" on tour boats, nightclubs and resorts. There is a huge gap in his employment history thereafter. He maintained a brief association with PMC, which he himself described as a "rather eclectic clinic," a somewhat short-lived and questionable enterprise at best. Without resolving the question, there may be some question whether St. Regis' practice was in violation of CAL.BUS. & PROF.CODE § 2903, which prohibits the practice of psychology without a license; "psychology" is statutorily defined to include hypnosis.[4] Although he is a member of certain professional organizations and has both attended and given lectures on hypnosis, he has never testified in court as an expert in hypnotherapy, nor has he been retained by any law enforcement agency, except for one dealing with misdemeanors. His recall of plaintiff's hypnotically induced descriptions of alleged sexual abuse by defendants was exacting, but such recall must be suspect, given that St. Regis previously had reviewed excerpts of plaintiff's deposition transcript.[5]

## II. CONCLUSION

Accordingly, for the reasons stated above, defendants' motion *in limine* (Dkt. # 66) is granted.[6]

See 28 U.S.C. § 636(b) (**written objections to ruling must be filed within ten days**

---

4. *But see* CAL.BUS. & PROF.CODE § 2908 (exempting "persons utilizing hypnotic techniques by referral from persons licensed to practice medicine ... or psychology, or persons utilizing hypnotic techniques which offer avocational or vocational self-improvement and do not offer therapy for emotional or mental disorders....").

5. Given this conclusion, there is no need to address the issue of corroborative evidence.
   Both sides spent considerable time addressing St. Regis' medical condition and whether any misrepresentations were made to the Court with respect thereto. The Court need not resolve this matter, which is clearly collateral to the significant issues raised here, assuming instead that there simply were some miscommunications between St. Regis and plaintiff's counsel.

6. Plaintiff's motion for reconsideration (Dkt. # 100)· is *granted,* but the court adheres to the conclusions reached in the Prior Ruling, except with respect to the burden of proof on establishing admissibility, which should be preponderance of the evidence, not clear and convincing evidence.
   Counsel should contact this Magistrate Judge's Chambers to arrange a telephonic status conference to discuss the impact, if any, of this ruling on the other pending motions referred to this Magistrate Judge.

after service of same); F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir.1989) **(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

## RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

Familiarity is presumed with this Magistrate Judge's Ruling on Defendants' Motion *in Limine,* filed March 24, 1993 (Dkt. # 95) and Supplemental Ruling on Defendants' Motion *in Limine,* filed May 26, 1993 (Dkt. # 112), as to which plaintiff has filed objections (Dkt. ## 102 & 113). On July 20, 1993, plaintiff filed a motion for leave to submit supplemental memorandum (Dkt. # 116). Defendants filed their brief in opposition on August 6, 1993 (Dkt. # 118). On August 13, 1993, plaintiff filed a reply brief (Dkt. # 119). That same day, U.S. District Judge T.F. Gilroy Daly granted such motion, permitting the supplemental brief to be filed (*see* endorsement on Dkt. # 116), and further construed the supplemental brief as a motion for reconsideration, to be referred to this Magistrate Judge "for such action, if any, she deems appropriate."

In the pending motion, plaintiff argues that the two prior rulings are inconsistent with the U.S. Supreme Court's decision, issued on June 28, 1993, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which specifically repudiated *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), with respect to novel scientific evidence. *See also In re Joint Eastern & Southern District Asbestos Lit.,* 827 F.Supp. 1014, 1025–26, 1031, 1032–34 (S.D.N.Y.1993).

As set forth in greater detail in defendants' brief (Dkt. # 118), the prior rulings here have not followed *Frye,* but rather *United States v. Williams,* 583 F.2d 1194 (2d Cir.1978), *cert. denied,* 439 U.S. 1117, 99

S.Ct. 1025, 59 L.Ed.2d 77 (1979), which abandoned *Frye* in favor of a more liberal approach under F.R.Evid. 702–05. Contrary to plaintiff's assertions, the two prior rulings here are wholly consistent with the *Daubert* decision.

Accordingly, plaintiff's motion for reconsideration (Dkt. # 116) is *granted,* but the Magistrate Judge adheres to the conclusions previously reached in Dkt. ## 95 and 112).

*See* 28 U.S.C. § 636(b) **(written objections to ruling must be filed within ten days after service of same);** F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir.1989) **(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at Bridgeport, Connecticut, this 18th day of August, 1993.