Dr. Maria Virginia **HERNANDEZ
LORING** Plaintiff

v.

**UNIVERSIDAD METROPOLITANA,**
et al.   Defendants

No.  CIV. 97–1215(SEC).

United States District Court,
D. Puerto Rico.

March 4, 2002.

Wilfredo A. Geigel, Esq., St. Croix, V.I.,
for Plaintiffs.

José E, De–la–Cruz–Skerret and Marta
L. Martínez–Rodriguez, Esqs., San Juan,
for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court are Defendants' motions in limine (**Docket##110, 113 and 119**).  Defendant seeks the exclusion of: 1) Plaintiff's psychiatric experts; 2) Plaintiff's economic expert; and 3) some of Plaintiff's fact witnesses (former UMET students). After considering Defendants' motions and

Plaintiff's respective oppositions (**Docket##115 and 122**), said motions will be **GRANTED in part and DENIED in part.**

### Psychiatric Experts

■ First, Defendant requests that Plaintiff's psychiatric experts, Drs. Costas and Ballon, be excluded because they were Plaintiff's treating physicians. We understand that there could indeed be a conflict of interest when a treating physician testifies as an expert with regards to his/her patient. However, in the case before us, both psychiatrists have ceased their responsibilities as treating physicians. This is especially true of Dr. Costas, who has not been treating Plaintiff for several years.

Furthermore, we believe that the type of conflict of interest present in this case does not compromise the admissibility of these psychiatrists' expert testimony. In *Holbrook v. Lykes Bros. Steamship Co., Inc.,* 80 F.3d 777 (3d Cir.1996), the Court of Appeals warned that "[i]t would be inconsistent with and run counter to the Rules' liberal policy of admissibility to allow an outside expert, hired solely for litigation purposes, to rely on and testify about a pathology report, but exclude testimony by the treating physician who ordered the report and relied on it for life-and-death decisions about the patient's treatment. Opinions by physicians who have neither examined nor treated a patient 'have less probative force, as a general matter, than they would have if they had treated or examined him.'" *Id.* at 782, *quoting Wier ex rel. Wier v. Heckler,* 734 F.2d 955, 963 (3d Cir.1984). We should also bear in mind that "[a] treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony." *Davoll v.*

*Webb,* 194 F.3d 1116, 1138 (10th Cir.1999). The case law, hence, shows a willingness to allow treating physicians to testify both as lay and as expert witnesses because of the high level of relevance of their testimonies. Therefore, Defendants' request to exclude the testimony of Drs. Costas and Ballon because they were Plaintiff's treating physicians is DENIED. Of course, Defendants will be able to cross-examine these witnesses during trial and impeach their credibility based on their potential conflict of interest.

■ Defendants also seek the exclusion of Dr. Ballon's testimony regarding Plaintiff's electroshock treatments. The Court understands that there are two distinct issues regarding this testimony that should be addressed separately. First, there is the issue of whether her treatment with electroconvulsive therapy (ECT) may be mentioned at all during trial. Even though ECT has been, and remains, a very controversial type of treatment, both the American Psychiatric Association and the National Institutes of Health have made positive statements about its effectiveness in treating certain types of very acute depressions. *See* American Psychiatric Association, *Electroconvulsive Therapy (ECT), at* http://www.psych.org/public_info/ect~1.cfm; and National Institutes of Health, *National Institutes of Health Consensus Development Conference Statement, at* http://text.nlm.nih.gov/ nih/cdc/www/51txt.html. As such, the Court understands that testimony regarding such procedure passes the *Daubert–Kumho* test for testimony regarding scientific or specialized knowledge. Therefore, Dr. Ballon will be allowed to testify regarding how ECT was used to treat Plaintiff's depression.[1]

1. Defendants also object to the admissibility of Dr. Ballon's testimony regarding ECT because he allegedly lacks any specialized knowledge about this type of treatment.

█ On the other hand, the issue of whether Dr. Ballon can testify about ECT as a mechanism for the recovery of repressed memories is a completely different matter. Plaintiff has offered no evidence, nor made reference to any academic literature which might suggest that ECT is at all effective in recovering repressed memories. Dr. Ballon himself admitted during his deposition that he was not aware of any such literature or academic studies, and that he himself had not had any patients who had recovered repressed memories through ETC. In fact, the only credible information the Court has been able to find regarding ECT and its relationship to memory indicates that one of the main side effects of said therapy may actually be a **loss of memory.** *Id.* As such, any expert testimony regarding the recovery of repressed memories through the use of ECT would be inadmissible under the *Daubert–Kumho* doctrine.

In addition, the case law regarding the admissibility of expert testimony about memories recovered through hypnosis has been very clear in establishing very strict safeguards when such testimony is offered. For example, it is generally required that such hypnosis be conducted by a physician highly experienced in such work, that the session be recorded, and that a detailed description of the relevant facts be obtained by the physician from the person to be hypnotized **before** the session. *See Borawick v. Shay*, 68 F.3d 597 (2nd Cir.1995); and *Borawick v. Shay*, 842 F.Supp. 1501 (D.Conn.1994). Fur-

thermore, "[a] party seeking to introduce hypnotically refreshed testimony has the burden of establishing admissibility by clear and convincing evidence." *Borawick*, 842 F.Supp. at 1505. *See also State v. Quattrocchi III*, 1999 WL 284882 (R.I.Super.1999) (holding that the State did not meet its burden of establishing that repressed recollection is reliable and admissible as scientific evidence). In conclusion, we find that Plaintiff has not adequately fulfilled the requirements of Fed.R.Evid. 702 with respect to ECT's effectiveness in the recovery of repressed memories. As such, Defendants' request is **GRANTED.** Dr. Ballon will not be allowed to testify on the issue of recovered memories.

## Economic Expert

Defendants have also requested that Plaintiff's economic expert, Mr. Soria, be excluded. They argue that his testimony and report will be based merely on speculation and conjecture. We disagree. First, Mr. Soria is prepared to testify about several different types of damages that were suffered by Plaintiff. Defendants' objections only apply to the part of his testimony dedicated to Plaintiff's medical expenses. Even with respect to this part of his testimony, the Court finds that Mr. Soria had enough information and knowledge on which to base an expert opinion admissible under the Federal Rules of Evidence. Although it is true that Mr. Soria apparently was unable to obtain as much evidence and information as he would have wanted, he did obtain some of Plaintiff's receipts from her medi-

---

However, the requirement of Fed.R.Evid. 702 as to a witness's qualification as an expert is very lenient. *See generally* Wright and Gold, Federal Practice and Procedure: Evidence § 6264. All that is required by Rule 702 is that the expert have enough specialized knowledge on the subject so that his testimony may assist the trier of fact in understanding the topic discussed. *Id.* Although Dr.

Ballon may not be an eminence in the field of ECT, he did receive some training on it in his days at Medical School and during his residency. Dr. Ballon will certainly be more knowledgeable about ECT than most, if not all, the members of the jury. Again, Defendants will be free to cross-examine Dr. Ballon and impeach his reliability as an ECT expert.

cal treatment, as well as some confirmations from her health insurance provider. Mr. Soria also interviewed Plaintiff herself on four occasions. Although Defendants might understand that Plaintiff's recollections might not be accurate, that is certainly a question for the jury to decide.

As we discussed previously, Fed.R.Evid. 702 is rather lenient in its requirement of specialized knowledge. The fact that Mr. Soria might not be a highly experienced expert witness, or that he might not have specialized training in valuation of lost earnings, does not disqualify him immediately as an economic expert. The Court understands that Mr. Soria does have enough knowledge to be able to assist the trier of fact in determining the amount of damages that should be awarded to Plaintiff, if any. Therefore, Defendants' motion is **DENIED**.

### Fact Witnesses—Former UMET Students

Defendants have also requested that some of Plaintiff's fact witnesses be excluded. Plaintiff intends to bring to testify at trial several former UMET students who will attest to the fact that they were also victims of several incidents of sexual harassment by Defendant, Dr. Luis R. Díaz. Defendants claim that such testimony is irrelevant, that these witnesses lack the requisite personal knowledge to testify about Plaintiff's case, and that testimony regarding said incidents would constitute character evidence inadmissible under Fed.R.Evid. 404(b).

It is true that these witnesses apparently know nothing about the specific incidents in which Dr. Diaz allegedly harassed Plaintiff. Therefore, they lack the requisite personal knowledge to testify about those incidents. However, Plaintiff intends to bring these witnesses to testify about something completely different. They are going to testify about incidents between them and Dr. Diaz. Since this testimony relates specifically to things that occurred to them, and things Dr. Diaz said in their presence, these witnesses fulfill the personal knowledge requirement of Fed.R.Evid. 602.[2]

▉ Defendants also contend that the testimony of these witnesses is irrelevant since it is not related to Plaintiff's encounters with Dr. Diaz. However, their accounts may be relevant to prove that there was a hostile work environment, in general, at the UMET. Having knowledge of this type of behavior might very well have contributed to the hostility felt by Plaintiff at her workplace. "Evidence that women other than the plaintiff were subjected to a hostile work environment clearly meets Rule 401's requirements in a number of situations. For example, a plaintiff may show that, while she was not personally subjected to harassing conduct, her working conditions were nevertheless altered as a result of witnessing a defendant's hostility towards other women at the workplace." *Hurley v. Atlantic City Police Department*, 174 F.3d 95, 110 (3d Cir.1999).

Furthermore, this testimony could be relevant with regards to the issues of motive and/or intent. "[A] variety of courts 'have held that *prior* discriminatory conduct is recognized as probative in an em-

---

**2.** Defendants claim that witness Deborah Maldonado will testify about incidents between Dr. Diaz and a third person. However, if this third person has given information to Ms. Maldonado, then she could satisfy the personal knowledge requirement of Fed. R.Evid. 602. Plaintiff, however, still needs to provide enough foundation testimony to satisfy the requirement of Rule 602. Of course, there is a question of whether her testimony could constitute inadmissible hearsay. However, Defendants may raise this issue at trial when it becomes clear specifically what testimony she will be offering.

ployment discrimination case on the issue of motive or intent.'" *Webb v. Hyman,* 861 F.Supp. 1094, 1110–11 (D.C.1994), *quoting Brown v. Trustees of Boston University,* 891 F.2d 337 (1st Cir.1989), *cert. denied* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990) (emphasis in original). Lastly, the students' testimony is highly relevant for proving that the UMET administration knew or should have known that Dr. Diaz was acting in a way which created a hostile work environment. *See Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417 (7th Cir.1986) (evidence of frequent misconduct against plaintiff and others was "pertinent, perhaps essential" to the employer liability determination); *Vinson v. Taylor,* 753 F.2d 141, 146 (D.C.Cir.1985) (same), *affd. sub nom. Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); and *Hurley,* 174 F.3d at 111. As such, these witnesses could be instrumental in proving the UMET's negligence.

The question of relevance, then, becomes highly intermingled with the question of whether the testimony is admissible under Fed.R.Evid. 403 and 404(b). The first thing we have to consider is that this testimony is being offered to prove, not that Dr. Diaz has a sexually harassing character and therefore harassed Plaintiff, but that there was a general atmosphere of sexual hostility at the workplace, and that UMET knew or should have known about it. Hence, the testimony does not fall into the category prohibited by Rule 404(b), and is admissible. *See Webb,* 861 F.Supp. at 1111 (holding that evidence of prior sexual harassment was admissible as direct evidence of a contemporaneous hostile working environment). "Moreover, in Rule 403 terms, this evidence is highly probative, hence it is unlikely that any putative prejudice therefrom will be unfair or will outweigh its value." *Hurley,* 174 F.3d at 110.

However, we believe it will be necessary to issue a limiting instruction to the jury on this matter. "At the outset, we note that [Dr. Diaz's] alleged harassment of other female employees cannot be used to prove that [he] propositioned" Plaintiff on a particular occasion. *Heyne v. Caruso,* 69 F.3d 1475, 1480 (9th Cir.1995), *citing* Fed. R.Evid. 404(b). It can only be used to prove, as described above, the existence of a generalized hostile work environment, and the knowledge and/or negligence of the UMET. It cannot be used to prove that on a specific instance Dr. Diaz acted in conformity with his alleged sexual harasser character and inappropriately propositioned Plaintiff. Such a limiting instruction will be given to the jury. Apart from that, the testimony of Plaintiff's factual witnesses is hereby deemed admissible under Fed.R.Evid. 401, 402, 403, 404 and 602. Defendants' motion is, therefore, **DENIED.**

### Conclusion

As specified above, and for the preceding reasons, Defendants' motions in limine are **GRANTED in part and DENIED in part.**

**SO ORDERED.**